UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY BUSHEY

                Plaintiff,

    - against –

JOHN MORLEY, MD; DAVID S. DINELLO, MD; BRANDI LYNN CORIGLIANO, NP

                Defendants.

9:21-cv-76 (GLS/ATB)

**VERIFIED COMPLAINT**

## PRELIMINARY STATEMENT

This is a civil rights action filed by Anthony Bushey ("Mr. Bushey" or "Plaintiff") for violations of his constitutional rights as secured by the Eighth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983. Mr. Bushey seeks equitable, declaratory and compensatory relief.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

2. The Northern District of New York is an appropriate venue under 28 U.S.C. § 1391(b)(2) as the situs of the events giving rise to the claims herein.

## JURY DEMAND

3. Plaintiff demands trial by jury in this action.

## THE PARTIES

### Plaintiff

4. Mr. Bushey was at all times mentioned herein a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") in one of its various facilities across the State of New York.

5. Mr. Bushey in-drafted in March of 2018 suffering from Parkinson's disease, hypertension, osteoarthritis, bipolar disease, morbid obesity, manic depression and either secondary hypogonadism or hypogonadotropic hypogonadism and an inverted gene.

6. In March of 2018, Mr. Bushey had been consistently treated for almost a decade with testosterone injections. The testosterone treatment regulated his body's testosterone levels and staved off the effects of his hypogonadism. Mr. Bushey entered DOCCS with a prescription for 1.25 ml of testosterone every two weeks.

### Defendants

7. **John Morley, MD ("Defendant Morley")** is the current Chief Medical Officer of DOCCS. He is sued in his official capacity for injunctive relief purposes.

8. **David S. Dinello ("Defendant Dinello")** is a Regional Medical Director ("RMD") employed by DOCCS. In his role as RMD, Dinello approves specialist appointments and approves or denies prescriptions for Medications with Abuse Potential ("MWAP") submitted by DOCCS' medical providers to treat their patients.

9.  **Brandi Lynn Corigliano ("Defendant Corigliano")** is a Nurse Practitioner employed by DOCCS. She currently works at Marcy Correctional Facility ("Marcy") and serves as a medical provider for patients in the custody of DOCCS.

## ALLEGATIONS

10.  Among other medical issues, Mr. Bushey suffers from hypogonadism, a clinical syndrome that results from failure of the testes to produce physiological levels of testosterone. Mr. Bushey's hypogonadism seems to be primary, meaning that he suffers from an anomaly in the testes. Mr. Bushey also has an inversion of chromosome 21, a mutation related to male infertility.

11.  For almost a decade, Mr. Bushey received testosterone replacement therapy from endocrinology doctors at University of Vermont Medical Center. He was administered 150 mg to 200 mg of testosterone every two weeks.

12.  The testosterone treatments regulated Mr. Bushey's symptoms related to low testosterone including mood swings, depression, joint pains, decreased muscle mass, decreased bone density, anemia and other serious symptoms.

13.  Before treatment, Mr. Bushey had testosterone levels below 200, which are considered quite low. With treatment his testosterone levels rose to 318 – still not normal, but an improvement.

14.  In 2017, Mr. Bushey was arrested and taken into custody.

15.  In March of 2018, Mr. Bushey in-drafted to DOCCS through Downstate Reception Center. His intake documents show that he was being treated with 1.5 ml of testosterone every 2 weeks.

16. DOCCS has a policy regarding testosterone administration that denies treatment to patients suffering from primary hypogonadism, no matter the severity of the patient's symptoms or suffering.

17. This policy does not comport with the community standard of care which recommends testosterone therapy in hypogonadal men to induce and maintain secondary sex characteristics and correct symptoms of testosterone deficiency.

18. DOCCS has a second policy which treats Testosterone as a Medication with Abuse Potential ("MWAP").

19. Treatment with medications deemed MWAP must be approved by an RMD pursuant to Health Services Policy 1.24 which mandates that a medical provider submit an MWAP Request Form to an RMD requesting the prescriptoin.  Once the form is submitted, the medication may be denied or approved at the sole discretion of the RMD.

20. For a patient to be seen by a specialty medical provider, such as an endocrinologist, a medical provider submits a "referral."  All referrals are reviewed by a quality assurance vendor, Kepro, who then denies or approves specialty referrals based on certain criteria.

21. When a specialty referral is deferred or denied (which is often the case) by Kepro, an RMD then reviews the referral and can override Kepro's decision according to the individualized medical needs of the patient.  In essence, whether or not a patient sees a specialist is up to the RMD.

22. During Mr. Bushey's incarceration he has been housed in both Mid-State Correctional Facility ("Mid-State") and Marcy Correctional Facility ("Marcy").

23. Defendant David Dinello was and is the RMD for both Mid-State and Marcy.

24. David Dinello is not an endocrinologist, a specialist in treatment of hypogonadism or testosterone issues in men.

25. In fact, David Dinello plead guilty to refusing to properly assess patients and treat them while he was working as an Emergency Room doctor at Auburn Community Hospital in Auburn, New York.

26. As a result of his guilty plea, Dinello lost his license to practice emergency medicine, had to be directly supervised for any practice of medicine for three years and was made to undertake instruction in the proper assessment of patient medical needs before returning to the practice of medicine.

27. Despite these censures, Dinello remains in his RMD position at DOCCS.

28. Dinello has never physically examined nor even met Mr. Bushey.

29. Immediately after intake in March of 2018, Mr. Bushey was transferred to Mid-State and the care of Doctors Venkata Mannava and Shazia Chaudry.

30. Without testosterone treatment, Mr. Bushey's mental and physical state quickly deteriorated.

31. Mr. Bushey started suffering from obvious side effects of low testosterone, including fatigue, weakness, difficult staying awake, loss of muscle mass, development of breast tissue, regression of secondary sex characteristics, body aches, and emotional variation. Mr. Bushey had trouble eating, sleeping, keeping his balance and ascending and descending stairs.

32. Mr. Bushey repeatedly approached medical staff at Mid-State Correctional Facility, including Dr. Venkata Mannava seeking treatment with testosterone.

33. It was only when Prisoners Legal Services sent letters on Mr. Bushey's behalf that Dr. Mannava scheduled an appointment for Mr. Bushey to see an endocrinologist.

34. On November 28, 2018 Mr. Bushey finally was seen via telemed by Dr. Marisa Desimone, an endocrinologist at Upstate University Health System in Syracuse, New York.

35. Dr. DeSimone requested labs including – total testosterone, LH, FSH, prolactin, CMP, CBC with diff, iron panel, lipids, PSA, TSH, Free T4 and Total T3, as well as his Vitamin D level and quantitative HcG and a mammogram for his breast development.

36. Dr. DeSimone requested to see Mr. Bushey again in four months when the labs were completed.

37. On December 11, 2018 when Dr. Mannava attempted to schedule Mr. Bushey's follow-up appointment with Dr. DeSimone, Dinello denied the appointment citing "NYDOCCS Guidelines" and not the individualized medical needs of Mr. Bushey.

38. On December 21, 2018 Mr. Bushey's blood worked showed a testosterone level of 117.6, well below a 'low' level of 300.

39. In light of the alarmingly low testosterone levels, Dr. Mannava did nothing for Mr. Bushey and followed the recommendation of David Dinello to refuse follow-up treatment with an endocrinologist.

40. A March 2019 mammogram showed that Mr. Bushey was suffering from bilateral gynecomastia, or breast growth.

41. Dr. Mannava again attempted to schedule Mr. Bushey for an appointment with an endocrinologist and, again, David Dinello refused the appointment citing "NYDOCCS Guidelines" and not the individualized needs of Mr. Bushey.

42. Dinello, once again, did not examine Mr. Bushey, read his medical records nor consider his individualized medical needs and additional symptoms.

43. Prisoners Legal Services again attempted to intervene on Mr. Bushey's behalf in January of 2019 to no avail.

44. May 31, 2019 blood work showed that Mr. Bushey's testosterone level had further dropped to 108.8, again far below normal levels.

45. After the May 31, 2019 blood work, Dr. Mannava again requested a consult with an endocrinologist for Mr. Bushey.

46. In June of 2019, PLS directly wrote David Dinello and laid out Mr. Bushey's history of hypogonadism and need for treatment.

47. PLS enclosed Mr. Bushey's relevant medical records, but Dinello refused to respond.

48. On June 28, 2019, Dr. Chaudhry noted that Mr. Bushey was suffering from joint pains, impaired ambulation, bilateral knee pain, bilateral foot pain, elevated ANA, impaired ambulation and that he required a cane.

49. On July 26, 2019 PLS once again reached out to David Dinello requesting medical help for Mr. Bushey.

50. In response, PLS received only a terse response from Dr. Chaudhry, stating that "Bushey is being treated according to NYSDOCCS protocol."

51. Again, there was no consideration of Mr. Bushey's individualized medical needs nor the impact that the lack of testosterone treatment was having on his deteriorating physical state.

52. On September 13, 2019 PLS reached out to Dr. John Morley, the Chief Medical Officer of DOCCS. Dr. Morley's office did not arrange for Mr. Bushey's examination or treatment in response to PLS's well-documented concerns.

53. In October of 2019 Mr. Bushey was transferred to Marcy Correctional Facility ("Marcy") and the care of Dr. Shehab Zaki and Defendant Corigliano.

54. Mr. Bushey asked Defendant Corigliano to restart his testosterone treatment given his increased fatigue, mood swings, muscle wasting, cognitive issues and breast enlargement. The lack of treatment also started to cause Mr. Bushey to fall from muscle weakness and fatigue.

55. Corigliano prescribed Mr. Bushey a quad cane, but her medical responses were dismissive at best.

56. She noted (incorrectly) that Mr. Bushey's doctor suggested he suffered from "primary testicular failure, not a pituitary problem. [Treatment] has been denied by Albany [Dinello], no need to check repeat labs at this time and decreased testosterone is not treated."

57. Corignliano left Mr. Bushey to suffer. She did not offer an alternative treatment nor anything else to provide effective relief for Mr. Bushey's pain and suffering.

58. On December 19, 2019 Dr. Morley's office responded to the PLS letter of September 13, 2019 with a standard pro forma response to a medical complaint, indicating only that "Mr. Bushey's primary care provider is the determinant of his medical care and treatment plan."

59. Mr. Bushey fell again in February of 2020 and broke his right hand.

60. In April of 2020, he fell again and broke his foot.

61. Mr. Bushey filed another grievance.

62. In September of 2020, Plaintiff's counsel in this action reached out to Corigliano, Morley and Dinello once again on Mr. Bushey's behalf requesting proper treatment and testing.

63. Corigliano noted in his medical records, "Request from inmate attorney received, requesting to restart testosterone and be seen by END. Requests have been made in past and have

been denied by [Dinello] – case again discussed with [Dinello], will obtain labs then readdress need for med and/or [endocrinology] consult."

64. Mr. Bushey's labs returned showing his testosterone level was now 78.2. His genitals were receding and in the intervening months he broke his hand in a fall and suffered injury to his foot.

65. On October 7, 2020 Dr. Morley again sent went of his pro forma responses: "I have been advised that Mr. Bushey was seen by his primary care provider on October 1, 2020 had lab work done on September 24, 2020 and he is currently scheduled to be seen by his priary care provider again. Mr. Bushey is encourage to bring all of his medical concerns to the attention of his primary care provider at his next appointment. Please be reminded that Mr. Bushey's primary care provider is the determinant of his medical care and treatment plan."

66. Like all of Morley's responses to appeals for adequate medical care, this letter only regurgitated a list of recent interactions with medical staff. It did not address the lack of treatment. The response also was dead wrong. Mr. Bushey's medical providers were not the "determinant(s)" of his medical care. His providers' repeated suggestions for endocrinology visits and medication were repeatedly denied by David Dinello, a defrocked physician who had never examined Mr. Bushey.

67. On October 13, 2020 Corigliano noted that she sent an email to Dinello about testosterone, yet again.

68. Dinello again denied treatment with testosterone without conducting an individualized assessment of Mr. Bushey's needs, without allowing a referral to an endocrinologist or any other treatment for Mr. Bushey's low testosterone and symptoms.

69. Mr. Bushey communicated to Corigliano that he was deteriorating with decreased strength loss of muscle mass, increased emotionality, fatigue and constant pain.

70. Despite the entreaties of multiple lawyers, doctors and Mr. Bushey, Defendants Corignliano and Dinello failed to arrange proper assessment and treatment of Mr. Bushey.

71. Defendant Dinello has repeatedly denied Mr. Bushey's referrals with endocrinologists and treatment with testosterone despite direct awareness of his suffering.

72. Mr. Bushey's counsel then hired an endocrinology expert, Dr. Jason Sloane, to review Mr. Bushey's medical records and conduct a physical examination of Mr. Bushey.

73. On December 31, 2020 Dr. Sloane examined Mr. Bushey at Marcy. Dr. Sloane unequivocally opined that Mr. Bushey requires appropriate testing for testicular cancer given repeated test results that shows elevated lactate dehydrogenase and HCG. If cancer is ruled out, Dr. Sloane recommends immediate resumption of Mr. Bushey's testosterone therapy to correct his severe and painful symptoms.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Deliberate Indifference in Violation of the Eighth Amendment*
**(Against Defendants Dinello and Corigliano in their individual capacities and Morley in his official capacity)**

74. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth herein.

75. Plaintiff Anthony Bushey is in the care and custody of NYS DOCCS. His medical needs are to be provided by Defendants Dinello and, currently, Defendant Brandi Lynn Corigliano, who is his medical provider.

76. John Morley is the Chief Medical Officer and, in his official capacity, can ensure that any injunctive relief is provided to Mr. Bushey no matter his housing facility within DOCCS.

77. Despite awareness that Mr. Bushey is suffering from his increased fatigue, mood swings, muscle wasting, cognitive issues, broken bones, and breast enlargement and pain, Defendants Dinello and Corigliano have done nothing to address Mr. Bushey's medical needs or alleviate his suffering.

78. Defendant Dinello has repeatedly "deferred" or "denied" Mr. Bushey's referrals to see endocrinologists who could properly assess and recommend treatment for Mr. Bushey's serious medical conditions.

79. Defendants Corigliano and Dinello repeatedly ignored laboratory reports showing that Mr. Bushey's testosterone levels were well before normal limits.

80. Defendant Dinello has repeatedly refused treatment with testosterone for Mr. Bushey despite past successful treatment with testosterone and the likelihood that such treatment would alleviate Mr. Bushey's pain, suffering and risks of further medical complications.

81. Defendant Corigliano has repeatedly examined Mr. Bushey and noted his severe medical symptoms related to the failure to treat his hypogonadism.

82. Defendant Corigliano has not advocated for Mr. Bushey's appropriate treatment, nor has she provided alternative treatments that might alleviate the serious and painful symptoms related to Mr. Bushey's hypogonadism.

83. Defendant Corigliano has also reviewed Mr. Bushey's many lab results showing very high HCG levels and has not arranged for an oncology work-up to determine if Mr. Bushey is suffering from testicular cancer potentially delaying diagnosis, treatment and putting Mr. Bushey at risk of developing serious complications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief and enter judgment in his favor:

A. Ordering DOCCS and current Chief Medical Officer, John Morley, MD or any successor to immediately arrange for an oncology work-up for Mr. Bushey;

B. Ordering DOCCS and current Chief Medical Officer, John Morley, MD or any successor to immediately recommence Mr. Bushey's testosterone therapy according to the recommendations of a Board-Certified endocrinologist who has full access to Mr. Bushey's medical records, current laboratory results and conducts an appropriate physical examination;

C. Awarding compensatory damages to Plaintiff against all Defendants;

D. Awarding punitive damages against Defendant Dinello;

E. Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. 1988; and

F. Ordering such other and further relief as the Court may deem just and proper.

Dated: January 12, 2021
New York, New York

LAW OFFICE OF AMY JANE AGNEW, P.C.

By: _____
Amy Jane Agnew, Esq.
Bar No. 700539
*Counsel for Plaintiff*
24 Fifth Avenue, Suite 1701
New York, New York 10011
(973) 600-1724
aj@ajagnew.com

## VERIFICATION OF COMPLAINT

Anthony Bushey, Plaintiff in the above-captioned matter, deposes and says the following under penalty of perjury:

1. My counsel, Amy Jane Agnew, Esq., has prepared the Verified Complaint and I received a hard copy to review through U.S. Express Mail.

2. Due to the COVID pandemic, my counsel could not sit with me in person to go over the contents of the Verified Complaint, but my possession of a copy allowed me to fully comprehend and understand the contents.

3. The statements made within the Verified Complaint are true to my own knowledge, or upon information and belief. As to those statements that are based upon information and belief, I believe those statements to be true.

In accordance with 28. U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: _____
Anthony Bushey, *Plaintiff*

Dated: 1/14, 2021
Marcy, New York