**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANTHONY BUSHEY,**

                **Plaintiff,**

                **v.**

**9:21-cv-76**
**(GLS/ATB)**

**JOHN MORLEY et al.,**

                **Defendants.**
_____

## SUMMARY ORDER

Plaintiff Anthony Bushey commenced this civil rights action against defendants John Morley, M.D.,[1] David S. Dinello, M.D.,[2] and Brandi Lynn Corigliano, N.P.,[3] alleging an Eighth Amendment claim for deliberate indifference to serious medical needs pursuant to 42 U.S.C. § 1983. (Compl., Dkt. No. 1.) Now pending is defendants' motion to dismiss and Bushey's cross-motion for a preliminary injunction. (Dkt. Nos. 12, 20.) For the reasons that follow, defendants' motion is denied, and Bushey's cross-motion is referred to Magistrate Judge Andrew T. Baxter to conduct an

---

[1] Morley is the current Chief Medical Officer of the New York State Department of Corrections and Community Supervision (DOCCS). (Compl. ¶ 7.)

[2] Dinello is a Regional Medical Director (RMD) employed by DOCCS. (*Id.* ¶ 8.)

[3] Corigliano is a Nurse Practitioner employed by DOCCS, who works at Marcy Correctional Facility (hereinafter "Marcy C.F."). (*Id.* ¶ 9.)

evidentiary hearing.

## I. **Background**[4]

Bushey is an inmate in the custody of DOCCS, who has been confined at Mid-State Correctional Facility (hereinafter "Mid-State C.F.") and Marcy C.F. (Compl. ¶¶ 4, 22.) He suffers from Parkinson's disease, hypertension, osteoarthritis, bipolar disease, morbid obesity, manic depression, and hypogonadism. (*Id.* ¶ 5.) Hypogonadism is a "clinical syndrome that results from failure of the testes to produce physiological levels of testosterone." (*Id.* ¶ 10.)

Prior to starting his term of imprisonment in March 2018, Bushey had been treated with testosterone injections for almost a decade, which managed certain symptoms, including "mood swings, depression, joint pains, decreased muscle mass, decreased bone density, [and] anemia." (*Id.* ¶ 12.) Indeed, his intake documents showed that he was being treated with 1.5ml of testosterone on a bi-weekly basis. (*Id.* ¶ 15.) He has been seeking testosterone treatment since he entered DOCCS custody, because, without it, he has experienced "fatigue, weakness, difficult[y]

---

[4] The facts are drawn from Bushey's complaint, (Dkt. No. 1), and presented in the light most favorable to him.

2

staying awake, loss of muscle mass, development of breast tissue, regression of secondary sex characteristics, body aches, and emotional variation." (*Id.* ¶¶ 30-32.)

According to the complaint, there are two DOCCS policies relevant to testosterone treatment. (*Id.* ¶¶ 16, 18.) The first policy calls for denying "treatment to patients suffering from primary hypogonadism," a policy that "does not comport with the community standard of care which recommends testosterone therapy in hypogonadal men." (*Id.* ¶¶ 16-17.) The second policy is one that treats testosterone as a Medication with Abuse Potential (MWAP). (*Id.* ¶ 18.) Treatment with an MWAP must be approved by an RMD, like Dinello, who "approves specialist appointments and approves or denies prescriptions for [MWAP] submitted by DOCCS' medical providers to treat their patients." (*Id.* ¶¶ 8, 19.) Notably, though, Dinello is not a specialist in testosterone issues, and he has never physically examined Bushey. (*Id.* ¶¶ 24, 28.)

In November 2018, Bushey was seen by Dr. Marisa DeSimone, an endocrinologist. (*Id.* ¶ 34.) Dr. DeSimone requested certain lab tests and noted that she would like to see Bushey again once she received the results of those tests. (*Id.* ¶¶ 35-36.) But when Dr. Venkata Mannava,

3

Bushey's medical provider at the time, tried to schedule a follow-up appointment with Dr. DeSimone, Dinello denied the appointment, despite the fact that Bushey's tests "showed a testosterone level of 117.6, well below a 'low' level of 300," and "breast growth."  (*Id.* ¶¶ 29, 37-41.)  Further, in the Spring of 2019, Bushey's blood work showed that his testosterone level dropped even further, to 108.8, and he was described as "suffering from joint paints, impaired ambulation, bilateral knee pain, [and] bilateral foot pain."  (*Id.* ¶¶ 44, 48.)  Yet requests to Dinello for "help" were denied.  (*Id.* ¶¶ 45-47, 49-50.)

Bushey was transferred to Marcy C.F. in October 2019, where he was in the care of Corigliano and Dr. Shehab Zaki.  (*Id.* ¶ 53.)  In response to Bushey's renewed request to start testosterone treatment, Corigliano was dismissive and prescribed him a quad cane.  (*Id.* ¶¶ 54-55.)  Morley was contacted about the situation, but he responded with a "standard pro forma response" and stated that Bushey's primary care provider determines his medical treatment.  (*Id.* ¶¶ 52, 58.)

In the year preceding the filing of his complaint, Bushey fell twice, breaking his right hand and foot, and his blood work showed his testosterone level had dropped to 78.2.  (*Id.* ¶¶ 59-60, 64.)  Nevertheless,

4

his requests for treatment were denied by Dinello, Corigliano, and Morley. (*Id.* ¶¶ 62-63, 65, 67-71.) Ultimately, Bushey's counsel hired an endocrinology expert, Dr. Jason Sloane, to review his records and physically examine him, and he opined that Bushey should be tested for testicular cancer given the results of his lab tests, and, if cancer is ruled out, he should be treated with testosterone therapy. (*Id.* ¶¶ 72-73.)

Bushey commenced this action on January 21, 2021, alleging an Eighth Amendment claim for deliberate indifference to medical needs, pursuant to 42 U.S.C. § 1983. (*See generally id.*) He brings this claim against Dinello and Corigliano in their individual capacities, and against Morley in his official capacity. (*Id.* ¶¶ 74-83.) Bushey seeks monetary relief, as well as a judgment ordering Morley to "arrange for an oncology work-up" of Bushey and to "recommence" his testosterone therapy. (*Id.* at 12.) Defendants now move to dismiss, and Bushey cross-moves for a preliminary injunction. (Dkt. Nos. 12, 20.)

## II. Discussion

Defendants contend that Bushey's Eighth Amendment claim should be dismissed for failure to state a claim, and because, even if the allegations in his complaint meet the elements of his claim, he has not

5

sufficiently alleged personal involvement. (*See generally* Dkt. No. 12, Attach. 1.)

## A. Deliberate Indifference

Under the Eighth Amendment, a claim of deliberate indifference to serious medical needs has two requirements. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "The first requirement is . . . [that] the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks and citation omitted). "The second requirement is . . . [that] the [defendants] must be subjectively reckless in their denial of medical care." *Id.* (citation omitted). Thus, the deliberate indifference standard has both objective and subjective components. *See id.*

"The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and citation omitted). In situations where medical attention is given, but is alleged to be objectively inadequate, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's

6

underlying medical condition alone." *Davis v. Parker*, No. 9:16-CV-1474, 2020 WL 5848779, at * 6 (N.D.N.Y. Oct. 1, 2020) (internal quotation marks, alteration, and citation omitted).  In these cases, "the relevant time period begins when a defendant becomes aware of facts from which he could, and does, infer that a substantial risk of serious harm exists." *Id.* (citation omitted).

The subjective component requires a plaintiff to demonstrate "that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness." *Shabazz v. Howard*, No. 9:12-CV-1372, 2015 WL 5604662, at *4 (N.D.N.Y. Sept. 23, 2015) (citations omitted); *see Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) ("To satisfy the subjective component, a plaintiff must establish the equivalent of criminal recklessness, i.e., that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks and citation omitted)).  In this regard, "[a] plaintiff must demonstrate that a defendant acted with reckless disregard to a known risk of substantial harm." *Shabazz*, 2015 WL 5604662, at *4 (citation omitted).

First, defendants argue that Bushey's complaint does not satisfy the

objective component of his claim because he does not allege (1) that his symptoms are caused by hypogonadism, and not one of the other illnesses from which Bushey suffers, or (2) that he was not experiencing these symptoms while he was being treated with testosterone before entering DOCCS custody.  (Dkt. No. 12, Attach. 1 at 4-6.)  At this juncture, Bushey has set forth sufficient allegations to show that his hypogonadism is a sufficiently serious condition that causes him "extreme pain."  *See Hill*, 657 F.3d at 122.  Specifically, he has alleged that, due to the lack of testosterone treatment, he has experienced "fatigue, weakness, difficult[y] staying awake, loss of muscle mass, development of breast tissue, regression of secondary sex characteristics, body aches, and emotional variation," that his condition has progressively gotten worse without the treatment, which has resulted in extremely low testosterone levels and broken bones, and that an endocrinologist who examined him opined that testosterone therapy would remedy his "severe and painful symptoms."  (Compl. ¶¶ 30-31, 59-60, 64, 73.)

Next, defendants contend that Bushey has not satisfied the subjective component of his claim because (1) the complaint does not allege that either Morley or Corigliano were "authorized to prescribe a

8

course of treatment with testosterone injections or to refer [Bushey] to an endocrinologist" and (2) "none of the events that would have had to occur for Dinello to become involved in determining whether to prescribe testosterone to [Bushey] or refer him to an endocrinologist is alleged in the [c]omplaint."[5]  (Dkt. No. 12, Attach. 1 at 6-8.)  In response, Bushey argues that defendants knew he would suffer without the requested treatment and either denied him that treatment outright or failed to assist him in receiving it.  (Dkt. No. 25 at 14-15.)  Further, Bushey asserts that, to the extent defendants argue that they could not provide him with the treatment due to a DOCCS' policy, such argument is unavailing because a defendant's refusal to proscribe treatment based on an agency policy, rather than a plaintiff's medical needs, arguably provides further support for a deliberate indifference claim at this stage.  (*Id.* at 15-16.)

At this early stage, Bushey has set forth sufficient allegations to satisfy the subjective component of his claim.  He has alleged that defendants knew about his condition and his alleged need for testosterone

---

[5] Specifically, defendants assert that Bushey does not allege that Dinello was his primary care provider or that "Kepro, the quality assurance vendor that makes specialist referrals, ever denied or approved a referral of [Bushey] to an endocrinologist." (Dkt. No. 12, Attach. 1 at 7-8.)

9

therapy, and either denied his requests for the treatment or effectively ignored them. Specifically, he has alleged that, while under Corigliano's care, she and Morley repeatedly denied his requests for testosterone treatment, which he claims would have alleviated his extreme pain. (Compl. ¶¶ 54-58, 62-66, 69-71.) And, as to Dinello, Bushey has alleged that he repeatedly denied follow-up appointments and referrals to see an endocrinologist. (*Id.* ¶¶ 37-41, 56, 66-70.) Bushey alleges that defendants did this despite his constant complaints of pain to them and despite the fact that an endocrinologist recommended an oncology work-up or testosterone therapy. (*Id.* ¶¶ 46-47, 52, 61, 69-73.)

Further, the court agrees with Bushey that the alleged policies that forbade defendants' from proscribing the treatment do not absolve them of liability, to the extent that defendants argue otherwise. *See Donohue v. Manetti*, No. 15-CV-636B), 2016 WL 740439, at *7 (E.D.N.Y. Feb. 24, 2016) ("Drawing all reasonable inferences in plaintiff's favor, plaintiff plausibly alleges that [defendant] was deliberately indifferent to plaintiff's medical needs when he denied plaintiff a medically necessary prescription because of new policies instituted by [defendant company]." (citations omitted)); *Koenigsmann*, No. 14CV2498, 2015 WL 4393321, at *3 (noting

10

that "whether the application of a policy can amount to deliberate indifference is generally a question of fact that should be submitted to the jury" and denying a motion to dismiss a deliberate indifference claim where "it [was] plausible to infer that [defendants] knew that (or were reckless with respect to whether) reflexive application of [a] policy to Plaintiff's case in the face of Plaintiff's repeated complaints of pain and [an] endocrinologist's contrary prescription would not be protective of Plaintiff's well-being"); *Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008) ("While disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim." (citations omitted)).

Accordingly, accepting his allegations as true, Bushey has sufficiently alleged an Eighth Amendment claim, and defendants' motion to dismiss in that regard is denied. *See Williams v. Koenigsmann*, No. 14CV2498, 2015 WL 4393321, at *3 (S.D.N.Y. July 16, 2015) (denying a motion to dismiss a deliberate indifference claim where, after the plaintiff was "prescribed a surgical consult," defendants "repeatedly denied . . . treatment . . . in the

11

face of Plaintiff's repeated complaints of pain and [an] endocrinologist's opinion that the pain would not resolve on its own); *see also Reynolds v. O'Gorman*, 9:20-CV-0686, 2020 WL 5494396, at *4 (N.D.N.Y. Sept. 11, 2020) ("Evidence of deliberate indifference may be found in: a lengthy delay in arranging for medically indicated treatment for a prisoner's serious medical problem, deliberate interference with a prisoner's prescribed treatment, the refusal of prison officials to provide necessary medical care as punishment for misconduct unrelated to the prisoner's medical condition, and a serious failure to provide needed medical attention when prison officials are fully aware of that need." (quoting *Davidson v. Scully*, No. 83-CV-2025, 1994 WL 669549, at *12 (S.D.N.Y. Nov. 30, 1994)) (alterations omitted)).

## B.   Personal Involvement

Defendants argue that Bushey's claim must be dismissed for the independent reason that he has not alleged their personal involvement in the alleged unlawful conduct.  (Dkt. No. 12, Attach. 1 at 8-9.)  In response, Bushey contends that "Dinello directly denied endocrinology consults and pre[]emptively refused testosterone under his application of policies and failure to conduct an individualized assessment," and that Corigiliano, who

12

was Bushey's provider at Marcy C.F., refused him testosterone treatment and failed to offer an alternative treatment, despite his pain and the fact that testing showed "very low testosterone levels." (Dkt. No. 25 at 16-19.) With respect to Morley, Bushey states that he was sued in his official capacity only and included as a defendant in this action for "injunctive purposes only" and "to ensure that any relief granted would benefit . . . Bushey regardless of transfer within DOCCS." (*Id.* at 17.)

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Johnson v. Miller*, No. 9:20-CV-0622, 2020 WL 4346896, at *9 (N.D.N.Y. July 29, 2020) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). That is to say, plaintiffs "must allege a tangible connection between the acts of the defendant and the injuries suffered." *Id.* (internal quotation marks and citation omitted). As to supervisory liability, there is no "special test," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020) (citation omitted).

Here, for similar reasons described in the discussion above regarding

13

the subjective component of Bushey's claim, the complaint sufficiently alleges personal involvement on part of defendants in that they either ignored or outright denied his requests for a treatment that, accepting Bushey's allegations as true, would alleviate his debilitating and excruciating pain. (Compl. ¶¶ 37-41, 46-47, 52, 54-58, 61-73.)

Accordingly, defendants' motion to dismiss based on a lack of personal involvement is denied.

### C. Bushey's Cross-Motion for Preliminary Injunction

In response to defendants' motion to dismiss, Bushey cross-moved for a mandatory preliminary injunction, seeking a judgment from the court "directing that [Morley] arrange for the immediate treatment of [Bushey] in conformity with the professional opinions and recommendations of" Dr. Sloane until Bushey is released from DOCCS custody. (Dkt. No. 20.) Bushey then filed letter motions requesting: (1) leave to file a reply in further support of his cross-motion; (2) an evidentiary hearing with respect to the cross-motion; and (3) limited discovery in preparation for that hearing. (Dkt. Nos. 33, 35, 38.) With respect to his request for limited discovery, Bushey seeks production of his "entire Ambulatory Health Records" and "all entries related to [him] created and maintained on

DOCCS' Facility Health Services Database." (Dkt. No. 33 at 2.)

On August 10, 2021, the court issued a Text Only Order, granting Bushey leave to file a reply and reserving decision on Bushey's requests for an evidentiary hearing and for discovery until the pending motion to dismiss was decided. (Dkt. No. 39.) Now that the court has denied the motion to dismiss with this Summary Order, the court must determine whether a hearing regarding Bushey's cross-motion for a preliminary injunction is necessary.

"A party seeking a preliminary injunction altering the status quo must establish: (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Perez v. Arnone*, 600 F. App'x 20, 21 (2d Cir. 2015) (citation omitted). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Id.* (citation omitted). With respect to Bushey's request for a hearing, "[t]he existence of factual disputes necessitates an evidentiary hearing before a motion for a preliminary injunction may be decided." *Id.* (internal quotation marks, alteration, and citation omitted).

Here, a review of the briefing on Bushey's cross-motion and his letter

motions, (*see generally* Dkt. Nos. 20, 25, 31, 33, 35, 37, 38), makes clear that factual issues exist, especially with respect to the irreparable harm factor, and, thus, an evidentiary hearing is necessary and appropriate. Accordingly, this matter is referred to Magistrate Judge Baxter to conduct that hearing, and, given that he will be presiding over the hearing, the request for limited discovery is referred to Judge Baxter as well.  *See Harper v. Cuomo*, No. 9:21-CV-0019, 2021 WL 1540483, at *1 (N.D.N.Y. Apr. 20, 2021) (noting that, after determining that the plaintiff's motion for a preliminary injunction presented factual issues, the matter was referred to a magistrate judge for a hearing); *Zielinski v. Annucci*, No. 9:17-CV-1042, 2019 WL 2870337, at *1 (N.D.N.Y. Mar. 19, 2019) ("District Judge . . . referred Plaintiff's request for injunctive relief to the [magistrate judge] for the purpose of scheduling and overseeing limited discovery concerning the motion [for a preliminary injunction], and . . . any evidentiary hearing that may be necessary on the motion.").

    Accordingly, it is hereby

    **ORDERED** that defendants' motion to dismiss (Dkt. No. 12) is **DENIED**; and it is further

    **ORDERED** that Bushey's cross-motion for a preliminary injunction

(Dkt. No. 20) is **REFERRED** to Magistrate Judge Andrew T. Baxter to conduct an evidentiary hearing and for the issuance of a Report and Recommendation; and it is further

**ORDERED** that Bushey's request to expedite limited discovery in advance of the evidentiary hearing (Dkt. Nos. 33, 35, 38) is **REFERRED** to Magistrate Judge Andrew T. Baxter; and it is further

**ORDERED** that the clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

September 10, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge